## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Atlas Data Privacy Corp., *et al.*,<br>　　　　　　　　　Plaintiffs,<br>v.<br><br>Innovis Data Solutions, Inc., *et al.*,<br>　　　　　　　　　Defendants. | Case No. 1:24-cv-04176-HB |

## DEFENDANT INNOVIS'S REPLY
## IN SUPPORT OF ITS MOTION TO DISMISS

Plaintiff Atlas's response (ECF 54) to Defendant Innovis's motion to dismiss (ECF 45-5) cannot and does not patch the holes in Atlas's claims against Innovis.  Innovis would respectfully draw the Court's attention to the following points.

### I.　　Atlas's Complaint did not plead facts, and Atlas's response ignores this.

Atlas's Complaint alleges that Innovis discloses information about individuals "through one or more websites or applications" which "include innovis.com," and that "upon information and belief," Innovis received non-disclosure requests via email and did not comply.  ECF 1-1 at ¶¶ 37, 39, 53, 59.   Innovis's brief made two points about these allegations, and Atlas failed to respond to either of them.

- A complaint only meets the federal pleading standard if it "provides a few facts [and] does not merely state that 'defendant negligently injured plaintiff.'" ECF 45-5 at 14-15, citing *In re Tower Air, Inc.*, 416 F.3d 229, 237 (3d Cir. 2005); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009) ("Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions"); *Aruanno v. Allen*, No. 09-cv-01250, 2012 U.S. Dist. LEXIS 190490, at **17-18 (D.N.J. April 10, 2012) (granting motion to dismiss

and explaining that "A statement of facts is similar to a newspaper article. Facts simply and specifically describe who did what to whom, and when and where, and in what sequence it was done"), *aff'd w/o precedent*, No. 12-2260, 498 Fed. Appx. 160, 163 (3rd Cir. Sept. 21, 2012).  Unlike Atlas's Complaints against other Defendants, Atlas's Complaint against Innovis does not identify a single person whose information Innovis disclosed (let alone *negligently* disclosed), and it does not plead facts to show that "innovis.com" is the kind of people-finder website that would permit such disclosure.  *Id*. at 13-14.

•     A complaint cannot make its central allegations "upon information and belief" and meet the fact-pleading standard.  *Id*. at 13, citing *Japhet v. The Francis E. Parker Memorial Home, Inc.*, No. 14-cv-01206, 2014 U.S. Dist. LEXIS 105134, at *7 (D.N.J. July 31, 2014) (dismissing a complaint whose "speculative" allegations "forc[ed] both the Defendants and the Court to guess who did what to whom when"); *see also Children's Health Defense, Inc. v. Rutgers*, 93 F.4th 66, 82 (3d Cir. 2024) (affirming dismissal where "The Complaint identifies nothing but 'information and belief' for the proposition" that the defendant was liable); *Piscopo v. Public Service Electric & Gas Co.*, No. 13-cv-00552, 2015 U.S. Dist. LEXIS 82982, at *20 (D.N.J. June 25, 2015) (collecting other cases for the proposition that "courts routinely reject" complaints whose central allegations are made upon information and belief).

Atlas's Complaint falls foul of these and other precedents, because it makes its central allegations "upon information and belief."  ECF 1-1 at ¶¶ 53, 59.  Atlas's Complaint does not (nor could it) plead any facts to show that Innovis used innovis.com to disclose covered person A's home address to third party B on day C despite having

2

received A's non-disclosure request from Atlas in one of the 19,000+ emails that Atlas allegedly sent near the 2023 holiday season.

Atlas's response brief fails to address either of these two points. Rather, Atlas's response states that "Plaintiffs allege facts establishing that Innovis discloses home address and unpublished phone numbers in violation of Daniel's Law, including through its website innovis.com," without identifying what those facts are. ECF 54 at 27. This statement in the response, like the allegations in the Complaint, is speculation, not fact, and it is not enough to survive a motion to dismiss.

Simply put, when Atlas decided to include Innovis among the 100+ Defendants it sued, Atlas made no effort to plead facts about how Innovis was "telling the world that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000." ECF 32 at 20. That is a fatal flaw, and Innovis's motion to dismiss should be granted for that reason alone.

## II.    Atlas cannot point to Innovis's website and ask the Court to ignore it.

Atlas's response invites the Court to consider Innovis's website at Innovis.com, but only if the Court does not look at it too closely. Atlas says that Innovis uses its website to disclose protected information to "visitors, users, or customers." ECF 54 at 27, 38. But Atlas says that taking a closer look at the website – to confirm that the website does not disclose protected information to third parties and to confirm that Innovis is a consumer reporting agency – is "not appropriate at the motion to dismiss stage." *Id*. Atlas is not only inconsistent; it is wrong on both counts.

First, a review of Innovis's website will show that Innovis **does not** disclose protected information to "visitors, users, or customers" who access innovis.com. If the Court were to access that website and attempt to obtain the home address or unlisted phone number of friends, family members, acquaintances, court staff, or any of the individual Plaintiffs whose names appear in the caption to Atlas's Complaint, it would be unsuccessful. That is the point that Innovis made in its first argument, discussed above, and Atlas cannot and does not rebut it.

Second, Atlas cannot put the website at issue in its Complaint, repeatedly mention it in its response, and even attach pages from it as exhibits (ECF 54-3 at 1-9), only to then claim that it would be inappropriate for the Court to take notice of it and confirm that (as numerous courts have also concluded) Innovis is a consumer reporting agency.[1] While it is true, as Innovis conceded and as Atlas repeats, that courts must be cautious about taking judicial notice of information in a plaintiff's own website at the motion to dismiss stage (ECF 45-5 at 10, ECF 54 at 29, both citing *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007)), courts can and do apply the doctrine of incorporation by reference and consider a defendant's website when a plaintiff puts it at issue. *See, e.g., Glendening v. Fair Acres Geriatric Ctr.*, No. 19-cv-01167, 2019 U.S. Dist. LEXIS 185965, at *2 n.2 (E.D. Pa. Oct. 28, 2019) (distinguishing *Victaulic* and taking judicial notice of defendant's website).

---

[1] Atlas's response cites an opt-out page and a privacy page on Innovis's website. ECF 54 at 27. The FCRA **requires** the opt-out page, as Innovis explained in its initial brief. ECF 45-5 at 21, citing 15 U.S.C. § 1681c(e)(1). And the privacy page confirms that "As a consumer reporting agency, Innovis sells consumer reports and personal information to customers with a permissible purpose to obtain this information." ECF 54-3 at 7.

4

### III.    Atlas's attempts to avoid FCRA preemption are flawed and unsuccessful.

Innovis argued that Daniel's Law is pre-empted by the Fair Credit Reporting Act. ECF 45-5 at 18-23. In response, Atlas makes a series of arguments, most of which misunderstand the FCRA and all of which are unsuccessful.

First, Atlas's claim that Innovis "can easily issue credit reports without" home addresses and phone numbers. ECF 54 at 41. That is incorrect: as Innovis explained in its initial brief, consumer reporting agencies use home addresses to match credit information about "David Smith" to the right "David Smith," and they allow the report's end-user to confirm that the "David Smith" described in the report is the one to whom it wants to extend credit. ECF 45-5 at 28. For just that reason, federal courts have approved the use of home addresses as a matching tool. *See, e.g., Lopez v. Experian Information Solutions, Inc.*, No. 19-cv-01954, 2022 U.S. Dist. LEXIS 89552, at *13 (N.D. Cal. May 18, 2022) (finding that it was reasonable for Experian to follow a 1991 consent order which required it to use "full street address" when matching credit information to consumers); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-cv-03760, 2013 U.S. Dist. LEXIS 50816, at *29 (S.D.N.Y. April 8, 2013) ("Trans Union was particularly justified in proceeding with an abundance of caution when trying to confirm Ogbon's address"); *Singletery v. Equifax Information Services, LLC*, No. 2:09-CV-0489, 2012 U.S. Dist. LEXIS 132969, at 828 (N.D. Ala. Sept. 18, 2012) (citing 12 C.F.R. § 1022.123 (b)(1) for the proposition that "An address, including a house number, is personally identifying information that is reasonably necessary to identify the consumer").

5

Second, Atlas appears to argue that if a protected person submits a non-disclosure request under Daniel's Law, Innovis must go beyond redacting the person's address and phone number from consumer reports: it must delete that information altogether. ECF 54 at 27, 48 (arguing that "Daniel's Law liability may attach 'regardless of whether a search of [Innovis's] list or database is actually performed'"). But that would make it impossible for Innovis, or any consumer reporting agency, to comply with numerous FCRA provisions that directly or indirectly require the use of addresses and phone information. *See, e.g.*, 15 U.S.C. § 1681c(h) (requiring disclosure of address discrepancies to end users); 15 U.S.C. § 1681c-1(h)(2)(A)(ii) (requiring maintenance of telephone numbers to allow end users of consumer reports to contact consumers about fraud alerts); 15 U.S.C. § 1681i(a)(6)(A) (requiring Innovis to provide written notice of reinvestigation results, which it does by mailing them to a consumer's home address); and 15 U.S.C. § 1681e(b) (requiring "reasonable procedures to assure maximum possible accuracy," such as address matching).

Third, Atlas argues that Daniel's Law is just an example of a state legislature imposing "more protective" rules than the federal Congress did when it enacted the FCRA (ECF 54 at 39, 42), such that there is no conflict between the FCRA and Daniel's Law (*id*. at 44). But this ignores the plain text of the FCRA's preemption provisions, which do not merely preclude laws to the extent that they conflict with the FCRA: they state that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under" specific FCRA provisions. ECF 45-5 at 20 (explaining that § 1681t(b)(1)(E) precludes Daniel's Law requirements on subject matter

regulated under § 1681c) and at 22 (explaining that 1681t(b)(1)(A) precludes Daniel's Law requirements on subject matter regulated under § 1681b(c)).[2]

Fourth, Atlas attempts to get around the no-state-laws-on-this-subject language in the FCRA's preemption provision by arguing that the FCRA does not apply to home addresses at all. ECF 54 at 39; *see also id.* at 26. It is true that some of the "credit header" data that appears at the start or "header" of a consumer report does not fall within the FCRA's definition of a "consumer report." *See* 15 U.S.C. § 1681a(d)(1) (defining a "consumer report" as "information … bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living"). For example, social security numbers do not fall within this definition.

But it is far from clear that home addresses and phone numbers always fall outside the FCRA's definition of a "consumer report" or are unnecessary to prepare a consumer report. As Atlas repeatedly points out, many courts have concluded that the personal identifiers in credit headers (*e.g.*, name, date of birth, and social security number) do not fall within the FCRA's definition of a "consumer report." ECF 54 at 26, 31-32, 39-40. But some courts have found that the home addresses in credit headers **may be** FCRA-regulated when used for certain purposes, because they may have a "bearing on a consumer's … mode of living" and thus could fall within the FCRA's definition of a

---

[2]    Atlas argues that a non-disclosure request under Daniel's Law does not conflict with the FCRA's opt-out provision at § 1681b(e). ECF 54 at 43-45. But this ignores both the FCRA's "subject matter" preemptions at § 1681b, and the FCRA provision that permits consumer reporting agencies to disclose address information about consumers who do not submit a specific opt-out request through a specific channel (§ 1681b(c)(1)(B)(iii), a provision which Atlas simply does not discuss).

consumer report. *See, e.g., Sweet v. LinkedIn Corp.*, No. 5:14-CV-04531-PSG, 2015 WL 1744254, at *7 (N.D. Cal. Apr. 14, 2015) ("Where people live and how long they live there can say a lot about their 'mode of living'").[3]

Under those courts' reasoning, a consumer's home address **may** be regulated by the FCRA, and Atlas's argument – that an address is never FCRA-regulated and therefore creates no conflict between the FCRA and Daniel's Law – collapses.

Fifth and finally, Atlas cites federal agency guidelines that do not help its arguments and favor Innovis's position. *See* ECF 54 at 41 n.23 (citing CFPB and Federal Reserve guidance which state that address and/or telephone information **_is_** part of a credit report); *see also* ECF 54 at 42 (citing 87 Fed. Reg. 41,042, which the CFPB recently withdrew at 90 Fed. Reg. 20,084, stating that it "should not be enforced or otherwise relied upon").

For all these reasons, this Court should reject Atlas's argument that home address and phone number information is unnecessary to consumer reporting, and it should find that Daniel's Law is pre-empted by the Fair Credit Reporting Act.

---

[3]    One of the cases that Atlas cited in its own brief reached this same conclusion. ECF 54 at 26, 32, and 40, citing *Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*, No. 08-cv-04708, 2010 U.S. Dist. LEXIS 47123, at **17-18 (D.N.J. May 12, 2010) (ruling that "information about where the consumer resides" might fall within the FCRA's definition at 15 U.S.C. § 1681a(d)).

**IV.    This Court need not address the as-applied challenge at this time.**

Atlas also argues that it would be premature for the Court to review Innovis's as-applied challenge to the constitutionality of Daniel's Law at the pleadings stage, without a fully developed factual record. [4]

Even if the Court accepts that argument, the Court should grant Innovis's motion to dismiss because Atlas's Complaint does not state a claim for which relief may be granted, and because Daniel's Law is pre-empted by the Fair Credit Reporting Act.

## IV.    CONCLUSION

Atlas's Complaint against Innovis does not state a claim for which relief may be granted.  Atlas does not and cannot plead any facts to show that Innovis negligently provided any covered person's information to a third party via "innovis.com."  Moreover, Daniel's Law is preempted by the Fair Credit Reporting Act.

There are state laws that draw a distinction between "telling *the world* that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000," ECF 32 at 20, and disclosing that information in appropriate contexts.   Daniel's Law is not one of them.  Because it is not, and because Atlas has failed to show that Innovis violated Daniel's Law even as written, Atlas' Complaint must be dismissed.

---

[4]    If this matter were to progress beyond the pleadings stage, Innovis could and would provide a factual record which would show, among other things, that including home addresses in consumer reports is absolutely a matter of public concern, notwithstanding Atlas's passing remark to the contrary.  ECF 54 at 30.  It is a matter of public concern because even the protected persons whom Daniel's Law intends to protect want to obtain credit:  that is why "Plaintiffs do not seek to restrict the furnishing of consumer reports to creditors or insurers, nor do they seek to alter how prescreening operates," ECF 54 at 43, and why Atlas filed a separate lawsuit against LexisNexis when it imposed credit freezes in an effort to comply with the non-disclosure requests it received.  *See John-Doe-1 v. LexisNexis Risk Solutions, Inc.*, No. 24-cv-04566, Opinion at ECF 32.

<u>/s/ Jill Guldin</u>
Jill Guldin
Pierson Ferdinand LLP
100 Overlook Center, 2nd Floor
Princeton, NJ 08540
T:  609.896.4096
E:  jill.guldin@pierferd.com
*Counsel for Innovis Data Solutions, Inc.*

<u>/s/ Jason A. Spak</u>
Jason A. Spak
FisherBroyles, LLP
6360 Broad Street #5262
Pittsburgh, PA 15206
T:  412-401-2000
E:  jason.spak@fisherbroyles.com
*Counsel for Innovis Data Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 27, 2025, I filed the foregoing MEMORANDUM with the Court's Electronic Case Filing (ECF) system, which will send a Notice of Electronic Filing (NEF) to, and thereby effect service upon, all parties through their counsel of record.

<u>/s/ Jill Guldin</u>
Jill Guldin
Pierson Ferdinand LLP