# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Atlas Data Privacy Corp., *et al.*, <br><br> Plaintiffs, <br> v. <br><br> Innovis Data Solutions, Inc., *et al.*, <br><br> Defendants. | (Electronically Filed) <br><br> Case No. 1:24-cv-04176-HB |

## **DEFENDANT INNOVIS'S REPLY TO THE NEW JERSEY ATTORNEY GENERAL IN SUPPORT OF ITS MOTION TO DISMISS**

Jason A. Spak (admitted *pro hac vice*)
**TROUTMAN PEPPER LOCKE LLP**
501 Grant Street, Suite 300
Pittsburgh, PA 15219
412-401-2000
Jason.Spak@troutman.com

Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
**TROUTMAN PEPPER LOCKE LLP**
104 Carnegie Center Suite 203
Princeton, NJ 08540
(609) 951-4125
Angelo.Stio@troutman.com
Melissa.Chuderewicz@troutman.com
Stephanie.Jonaitis@troutman.com

## **TABLE OF CONTENTS**

**Page**

1. Consumer addresses and phone numbers are necessary parts of consumer reporting, and the Fair Credit Reporting Act requires and regulates their use and disclosure. ................................................................................................... 2
2. The restrictions that Daniel's Law attempts to impose on consumer reporting agencies are inconsistent with, and therefore preempted by, the FCRA. ................................................................................................................... 5
3. The FCRA's regulations on the use of home addresses in prescreened offers of credit preempt Daniel's Law's attempt to impose an absolute ban that would prevent consumer reporting agencies from even storing home addresses. .............................................................................................................. 9
4. Conclusion. ......................................................................................................... 13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. LexisNexis Risk & Info. Analytics Group, Inc.*,
   No. 08-cv-04708, 2010 U.S. Dist. LEXIS 47123 (D.N.J. May 12, 2010) ..............................3

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................7

*Consumer Data Industry Association v. Swanson*,
   No. 07-cv-3376, 2007 U.S. Dist. LEXIS 55571 (D. Minn. July 30, 2007) ........................12

*Cornerstone Credit Union League v. Consumer Financial Protection Bureau*,
   2025 U.S. Dist. LEXIS 131801 (E.D. Tex July 11, 2025) ......................................................9

*Geier v. American Honda Motor Co.*,
   529 U.S. 861 (2000)..................................................................................................................8

*Individual Reference Services Group, Inc. v. FTC*,
   145 F. Supp. 2d 6 (D.D.C. 2001) ............................................................................................2

*Lopez v. Experian Information Solutions, Inc.*,
   No. 19-cv-01954, 2022 U.S. Dist. LEXIS 89552 (N.D. Cal. May 18, 2022).........................4

*Ogbon v. Beneficial Credit Servs., Inc.*,
   No. 10-cv-03760, 2013 U.S. Dist. LEXIS 50816 (S.D.N.Y. April 8, 2013).......................2, 4

*Runyon v. ClearStar, Inc.*,
   24-cv-1519, 2025 WL 1530582 (E.D.N.Y. May 29, 2025) ....................................................3

*Singletery v. Equifax Information Services, LLC*,
   No. 2:09-CV-0489, 2012 U.S. Dist. LEXIS 132969 (N.D. Ala. Sept. 18,
   2012) .........................................................................................................................................4

*Sweet v. LinkedIn Corp.*,
   No. 5:14-CV-04531-PSG, 2015 WL 1744254 (N.D. Cal. Apr. 14, 2015) .............................3

*Wright v. United States*,
   No. 22-1164, 2023 U.S. App. LEXIS 17910 (3d Cir. July 14, 2023)....................................7

**Statutes, Rules and Regulations**

15 U.S.C. § 1681a(d) ................................................................................2, 4, 6, 8, 10, 11, 12, 13

12 C.F.R. § 1022.123(b)(1) ..............................................................................................................4

16 CFR § 313.14(b)(2)(vi) ...............................................................................................................8

16 CFR § 313.15(a)(2)(ii) ................................................................................................................7

The New Jersey Attorney General ("NJAG") concedes that "the FCRA would preempt Daniel's Law . . . as applied to home address and telephone numbers appearing within a consumer report transmitted to another by a CRA." ECF 74 at 37, n.17.[1]

The NJAG further concedes that "Innovis operates a consumer reporting agency" that is regulated by the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*.  ECF 74 at 15; *see also id*. at n.10 (citing a page from Innovis's website, which Atlas Data previously filed at ECF 54-3 at 7, and which begins "Innovis Data Solutions, Inc. is a consumer reporting agency").

These two concessions are consistent with Innovis's motion to dismiss, which showed that the FCRA imposes obligations on Innovis and other consumer reporting agencies which preempt any obligations that Daniel's Law might attempt to impose upon them.  ECF 45-5.

The NJAG's response brief nevertheless makes two attempts to limit the scope of the FCRA's preemptive effect, and it submits a third argument that Daniel's Law can be reconciled with Innovis's obligations under the FCRA.  All three attempts fail, as this brief will show.

---

[1] Citations to page numbers in prior briefs are to the blue number that the ECF system stamps at the top of each page, not to whatever number may appear at the bottom of the page.

### 1. Consumer addresses and phone numbers are necessary parts of consumer reporting, and the Fair Credit Reporting Act requires and regulates their use and disclosure.

The NJAG's first argument is that the home addresses and phone numbers that Daniel's Law regulates are part of the "credit header" information that appears at the beginning of a credit report, but they are not actually part of the credit report. The NJAG contends that this "credit header" information does not fall within the FCRA's definition of a "consumer report," because it does not provide information about a person's credit worthiness, reputation, characteristics, or mode of living. ECF 74 at 35 (citing 15 U.S.C. § 1681a(d) (defining "consumer report")). Atlas Data made this same argument in its response brief (ECF 54 at 58-59), and Innovis rebutted it in its reply brief (ECF 58 at 5-8).

The argument runs as follows: for decades, some consumers have alleged that if there is inaccurate identifying information in the credit report's header (*e.g.*, incorrect names, addresses, dates of birth, and social security numbers), the inaccuracy gives rise to a claim under the FCRA. In response, some consumer reporting agencies have argued that consumers can only state FCRA claims over inaccurate *credit* information (*e.g.*, incorrect information about a loan or credit card account): they cannot sue under the FCRA over allegedly inaccurate personal identifiers, because those identifiers do not fall within the FCRA's definition of a "consumer report" at 15 U.S.C. § 1681a(d).

The existence of this long-standing argument does not prove what Atlas Data and the NJAG think it proves. The NJAG submits that the mere existence of this long-standing argument proves that the FCRA "does not apply to personal information that does not bear on a person's credit." ECF 74 at 35. The NJAG is mistaken, for two reasons.

2

First, the NJAG's argument is not supported by either of the two cases that the NJAG cites.  *See id*.  In *Individual Reference Services Group, Inc. v. FTC,* 145 F. Supp. 2d 6 (D.D.C. 2001), the court ruled that "credit header information" is "nonpublic personal information" under the Gramm-Leach-Bliley Act, and that the FTC can regulate it, but the court did not address any FCRA dispute.  The court did observe, in dicta, that "[b]oth sides agree that credit header information is not currently subject to the FCRA," but it did not rule on whether they were right, twenty-five years ago, to so agree.

More recently, in *Runyon v. ClearStar, Inc.,* 24-cv-1519, 2025 WL 1530582, at *4 (E.D.N.Y. May 29, 2025), the court observed that "personally identifying information, without more, does not fall within FCRA's definition of a consumer report."  But it then found that the report before it contained an allegedly misleading disclaimer about the plaintiff's social security number, which had a "bear[ing] on Plaintiff's character, thus rendering the Report a 'consumer report' within the meaning of the FCRA."  *Id*.  The *Runyon* decision did not discuss home addresses or phone numbers.

In short, the question of whether a consumer's home address or phone number falls within the FCRA's definition of a "consumer report" never came up in either of the two cases that the NJAG cited.

Innovis previously cited two other cases – including one that Atlas Data cited in its own response brief – in which the court ruled that a consumer's home address ***did*** fall within the FCRA's definition of a consumer report. ECF 58 at 8, citing *Sweet v. LinkedIn Corp.,* No. 5:14-CV-04531-PSG, 2015 WL 1744254, at *7 (N.D. Cal. Apr. 14, 2015); *Adams v. LexisNexis Risk & Info. Analytics Group, Inc.,* No. 08-cv-04708, 2010 U.S. Dist. LEXIS 47123,

3

at **17-18 (D.N.J. May 12, 2010). In summary, the NJAG's claim that home addresses and phone numbers are "credit header" information as a matter of law, such that they are not regulated by the FCRA, is not supported.

Second, while the much-debated question of whether a consumer can state an FCRA claim over an inaccurate credit header is interesting, it is not the question at issue here. The question at issue in this case is whether the FCRA requires consumer reporting agencies like Innovis to keep and use home addresses and telephone numbers.

The answer to that second, more pertinent question is a resounding affirmative:

- Multiple FCRA provisions _require_ consumer reporting agencies to keep, use, and disclose a consumer's home addresses and phone numbers – the same identifiers that Daniel's Law says must be deleted. ECF 58 at 6, citing 15 U.S.C. §§ 1681c(h) (requiring agencies to notify creditors of address discrepancies); 1681c-1(h)(2)(A)(ii) (requiring agencies to provide the phone number "designated by the consumer" who requested an identity theft alert); § 1681i(a)(6)(A) (requiring agencies to provide notice of reinvestigation results "by mail"); and § 1681e(b) (requiring "maximum possible accuracy," which using addresses promotes). The NJAG knew about these statutes – Innovis cited them in its prior reply brief – but it did not address them.
- Multiple federal district courts have held that it is reasonable for consumer reporting agencies like Innovis to use home addresses to ensure that they match their credit information to the correct consumer, and that they do not provide a credit report about officer David Smith of Dunellen, NJ, to someone who asked for a credit report about officer David Smith of Parsippany, NJ. ECF 45-5 at 26; ECF 58 at 5, citing *Lopez v. Experian Information Solutions, Inc.*, No. 19-cv-01954, 2022 U.S. Dist. LEXIS 89552, at *13 (N.D. Cal. May 18, 2022); *Ogbon v. Beneficial Credit Servs., Inc.*, No. 10-cv-03760, 2013 U.S. Dist. LEXIS 50816, at *29 (S.D.N.Y. April 8, 2013); *Singletery v. Equifax Information Services, LLC*, No. 2:09-CV-0489, 2012 U.S. Dist. LEXIS 132969, at 828 (N.D. Ala. Sept. 18, 2012). The NJAG knew about these court decisions – Innovis cited them in its prior reply brief – but it did not discuss them.
- Multiple federal regulations and agency opinions indicate that consumer reporting agencies can and should use home addresses to ensure a consumer's identity, and that one's home address is a common part of a credit report. ECF 58 at 5, citing 12 C.F.R. § 1022.123(b)(1) (listing home addresses among "[e]xamples of information that might constitute reasonable information requirements for proof of identity"); *see also* ECF 58 at 8 (citing CFPB and Federal Reserve guidance that Atlas Data cited in its

4

response brief, ECF 54 at 60 n.23, which state that "Credit reports often contain … Current and former addresses . . . [and] phone numbers" and that "A credit report is a record of your credit history that includes information about … Your name [and] address")). The NJAG knew about that regulation and guidance – Innovis cited them in its prior reply brief – but it did not discuss them.

In summary, Atlas Data and the NJAG have argued that if the FCRA does not permit consumers to sue over inaccurate home addresses and phone numbers when they appear in a credit report's header, then the FCRA does not apply to home addresses and phone numbers at all. But the conclusion that Atlas Data and the NJAG are asking this Court to adopt does not follow from their debatable premise.

Atlas Data and the NJAG do not and cannot dispute that, whether or not inaccurate "credit header" information can support an FCRA claim, the FCRA contains numerous provisions that require and regulate consumer reporting agencies' use of home addresses and telephone numbers. Those provisions mean that the NJAG's first argument – that the FCRA does not apply to home addresses and phone numbers at all – lacks support and should be rejected.

2. **The restrictions that Daniel's Law attempts to impose on consumer reporting agencies are inconsistent with, and therefore preempted by, the FCRA**.

The NJAG offers a second argument which is the mirror image of its first: if "the FCRA's scope of regulation is limited to information contained in 'consumer reports,'" then the claims in Atlas Data's Complaint, which does not mention consumer reports, and which might be about conduct outside of consumer reporting, would not be preempted. ECF 74 at 35; *see also* ECF 74 at 15 n.10 (citing a page from Innovis's website,

5

which Atlas Data previously filed at ECF 54-3 at 7, regarding "services for 'credit, receivables management, fraud prevention, and authentication purposes'").[2]

This argument is flawed because the regulations cited in Part 1, above, show that the FCRA's scope is *not* limited to information in "consumer reports." It is further flawed for two additional reasons.

The first reason is one that Innovis raised in its motion to dismiss: namely, because Atlas Data's claims against Innovis are vague and devoid of fact – the only specific allegation is that Innovis uses innovis.com to operate a people-finder service, which is easily checked, and which is not and never has been true – Innovis can only guess at what Atlas Data thinks that Innovis is doing to violate Daniel's Law.

The most obvious guess is that, because Innovis is a consumer reporting agency (which numerous courts have stated, ECF 45-5 at 8-9, and which Atlas Data and the NJAG do not seriously attempt to – and cannot - deny), Atlas Data is claiming that the sorts of disclosures that Innovis makes as a consumer reporting agency violate Daniel's Law.

If Atlas Data is willing to clarify, in court, that to the extent that Innovis uses home addresses to prepare consumer reports and to confirm a consumer's identity or otherwise

---

[2] Of course, none of these services are incompatible with the FCRA, which expressly provides that a consumer reporting agency may provide a consumer report to a person that it has reason to believe intends to use the information in connection with extension of credit to a consumer or collection of an account of the consumer or that has a legitimate business need in connection with a business transaction initiated by the consumer, among other permissible purposes. *See* 15 U.S.C. §§ 1681b(a)(3)(A) and 1681b(a)(3)(F).

comply with the FCRA, it is *not* violating Daniel's Law, Innovis will happily drop its FCRA preemption argument.

Until then, Innovis should not be forced to guess and undergo costly discovery about whether Atlas Data contends that keeping and using home addresses and phone numbers to comply with the FCRA is, at the same time, a violation of Daniel's Law. *See Wright v. United States*, No. 22-1164, 2023 U.S. App. LEXIS 17910, at **4-5 (3d Cir. July 14, 2023) (dismissing complaint because defendants were "left to guess the specific factual nature and the legal basis of [the] claims against them"); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007) ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed") (citation omitted).

Indeed, to the extent that Atlas Data or the NJAG are attempting to claim that Innovis's "services for 'credit, receivables management, fraud prevention, and authentication purposes,'" ECF 54-3 at 7, somehow violate Daniel's Law, the Complaint is silent as to what services those are, and how they could violate Daniel's Law.

Any such unarticulated claims, if they were made, would be preempted by the FCRA, or by federal statutes and regulations such as the Graham-Leach-Bliley Act. *See, e.g.*, 16 CFR § 313.15(a)(2)(ii) (permitting Innovis to disclose a consumer's "nonpublic personal information," which includes addresses and unlisted telephone number information, if the disclosure would "protect against or prevent actual or potential fraud, unauthorized transactions, claims, or other liability," even if the consumer opted out of

disclosure generally); 16 CFR § 313.14(b)(2)(vi) (same, if the disclosure is "in connection with," among other things, account collection).[3]

The second flaw with the NJAG's second argument (that the FCRA only regulates information that appears in a consumer report and therefore does not preempt claims about information that appears outside of a consumer report) is the argument simply is not true. The FCRA preempts state laws, including Daniel's Law, "to the extent that those laws are inconsistent with any provision of this title." 15 U.S.C. § 1681t(a).

Daniel's Law is inconsistent with numerous provisions in the FCRA which pertain to information that appears outside of a consumer report. For example, 15 U.S.C. § 1681g requires Innovis to provide file disclosures to consumers – these disclosures are not consumer reports – and 15 U.S.C. § 1681s-3 pertains to sharing non-consumer report information with affiliates. The FCRA's identification provisions at 15 U.S.C. §§ 1681c(h); 1681c-1(h)(2)(A)(ii); and § 1681i(a)(6)(A), described above, can each involve data that does not constitute a consumer report, and Daniel's Law is inconsistent with them as well. In short, the FCRA's scope extends well beyond the mere preparation and transmission of consumer reports.

Where a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," that law is preempted. *Geier v. American Honda Motor Co.*, 529 U.S. 861, 899 (2000). Because Daniel's Law stands as an obstacle to

---

[3] *See* FTC guidance at: https://www.ftc.gov/business-guidance/resources/how-comply-privacy-consumer-financial-information-rule-gramm-leach-bliley-act ("NPI is … name, address").

Innovis's ability to fulfil its FCRA obligations (and indeed, makes fulfilling many such obligations impossible), Daniel's Law is preempted, regardless of whether the data at issue is or is not considered to be part of, or within the definition of, a consumer report.

The NJAG's claim that "the FCRA's scope of regulation is limited to information contained in 'consumer reports' about creditworthiness and the like," ECF 74 at 35, is unsupported and unsupportable.  To the contrary:  "just as an agency cannot prohibit what a federal statute explicitly permits, neither can a state law." *Cornerstone Credit Union League v. Consumer Financial Protection Bureau*, 2025 U.S. Dist. LEXIS 131801, *35-36, (E.D. Tex July 11, 2025) (allowing a CFPB rule that attempted to limit the dissemination of medical debt information to be vacated by settlement, "because it exceeds the Bureau's statutory authority and violates both FCRA and the APA").

The FCRA extends far beyond the mere preparation of consumer reports, and it contains numerous provisions which require consumer reporting agencies to keep and use home addresses and phone numbers.  It thus conflicts with and therefore preempts Daniel's Law.

3. **The FCRA's regulations on the use of home addresses in prescreened offers of credit preempt Daniel's Law's attempt to impose an absolute ban that would prevent consumer reporting agencies from even storing home addresses**.

The NJAG's third and final argument is that "even assuming the FCRA applies to some of Innovis's disclosures, Daniel's Law's opt-in provision does not conflict with the FCRA's opt-out provision." ECF 74 at 38.  This argument refers to a practice that Innovis – in a page on its website that Atlas Data and the NJAG both cited – calls "prescreening."

9

ECF 54-3 at 8.  Once again, the NJAG fails to address specific provisions in the FCRA that regulate prescreening and that cannot be reconciled with Daniel's Law.

Prescreening occurs when a creditor – for example, a national credit card company that is hoping to issue more credit cards to American consumers – asks a consumer reporting agency like Innovis to identify the names and addresses of consumers who, based on their credit history, meet the creditor's minimum qualifications for these credit cards.  The creditor is asking Innovis for a list of consumers to whom it can mail what the FCRA calls a "firm offer of credit or insurance."  15 U.S.C. § 1681b(c)(1)(B)(i) (permitting consumer reporting agencies to provide such lists to creditors when certain conditions – including the existence of a "firm offer" – are met).  In this situation, the FCRA explicitly authorizes Innovis to provide the creditor with "the name and address of a consumer."  15 U.S.C. § 1681b(c)(2)(A).

The FCRA requires Innovis to allow consumers to opt out of prescreening – *i.e.*, to tell Innovis not to include their names and addresses in the prescreened lists that it gives to creditors.  15 U.S.C. § 1681b(e).

The NJAG's argument is that there is no difference between a consumer who opts out from prescreening, by telling Innovis not to include his name and address in prescreened lists under 15 U.S.C. § 1681b(e), and a protected person who tells Innovis to take down his address under Daniel's Law.  ECF 74 at 38-39.  The NJAG is mistaken.  There are two irreconcilable differences between a consumer who opts out of prescreening, and a consumer who submits a takedown request under Daniel's Law.

10

The first difference is the form the request takes.  The FCRA states that a consumer "shall" notify a consumer reporting agency of his desire to opt out of prescreening in one of two statutorily-defined ways:  a) "through the notification system maintained by the agency" (a system that is itself statutorily-defined); "or" b) "by submitting to the agency a signed notice of election form issued by the agency."  15 U.S.C. § 1681b(e)(2)(A-B).

The FCRA's use of "shall" and "or" indicates that these are the *only* two ways for a consumer to opt out of prescreening.  Atlas Data and the NJAG are proposing a third option, namely a takedown request submitted by Atlas Data's Atlasmail system in an email dump near the holiday season.  That option is not in the FCRA's statutory text.

The second difference is the burden that the request imposes.  If a consumer tells Innovis, by going to its notification system or completing its notice of election form, that she does not want her name and address to be included on prescreened lists that Innovis gives to creditors, the FCRA requires Innovis to heed that request.  But the FCRA still requires Innovis to keep and use her name and address to assure the accuracy of its credit reports, and to meet other FCRA obligations that will be described below.

In sharp contrast, a consumer who submits a takedown request under Daniel's Law is telling Innovis to *permanently delete* her address and phone number.  *See* ECF 54 at 27, 48 (arguing that "Daniel's Law liability may attach 'regardless of whether a search of [Innovis's] list or database is actually performed'").

These two differences show that the NJAG's blithe assurance that "it is wholly possible for a CRA to comply with both the FCRA's and Daniel's Law's individual-choice provisions," ECF 74 at 39, is simply not true.  Innovis cannot simultaneously limit

11

consumers to the two prescreening opt-opt options set forth at 15 U.S.C. § 1681b(e)(2)(A-B), and also allow consumers a third option in the form of a Daniel's Law takedown request. Likewise, Innovis cannot keep and use home addresses and phone numbers to distinguish between consumers who have similar names, social security numbers, and dates of birth, to name just one of the many FCRA requirements related to addresses and phone numbers, while also deleting home addresses and phone numbers under Daniel's Law. Simply put, the obligations that the FCRA imposes are irreconcilable with the obligations that Daniel's Law imposes. For that reason, the FCRA preempts Daniel's Law. Indeed, the FCRA has a specific preemption provision at 15 U.S.C. § 1681t(b)(1)(A) which specifically precludes states from attempting to regulate prescreening.

The District of Minnesota applied that provision in *Consumer Data Industry Association v. Swanson*, No. 07-cv-3376, 2007 U.S. Dist. LEXIS 55571 (D. Minn. July 30, 2007), which arose when the Minnesota Attorney General was about to enforce a Minnesota law that attempted to prevent consumer reporting agencies from selling "mortgage-trigger lists" – lists of consumers who were actively shopping for a mortgage – to creditors. The court imposed a restraining order and held that:

> The preemptive reach of the FCRA is both broad and explicit: Section 1681t(b)(1)(A) preempts any state law that imposes a prohibition or requirement with respect to "any *subject matter* regulated by" § 1681b(c) … [T]he "subject matter" of mortgage-trigger lists is unquestionably regulated by § 1681b(c), and thus, under § 1681t(b)(1)(A), neither Minnesota nor any other state may prohibit or regulate their sale.

*Swanson*, 2007 U.S. Dist. LEXIS 55571, at *11 (italics in original).

In summary, there is no way to reconcile Daniel's Law with the FCRA, and these irreconcilable differences are especially evident in prescreening. The FCRA permits consumer reporting agencies to share home addresses at 15 U.S.C. § 1681b(c)(2)(A), provides two exclusive opt-out options at 15 U.S.C. § 1681b(e)(2), and preempts New Jersey from attempting to regulate this subject at 15 U.S.C. § 1681t(b)(1)(A). The NJAG's attempt to reconcile Daniel's Law with the FCRA must be rejected.

4. **Conclusion**.

Atlas Data's Complaint against Innovis did not state a claim for which relief may be granted. The only claim that it articulated – that Innovis operates a people-finder service on its website and thereby violates Daniel's Law – is verifiably untrue.

To the extent that this Court permits Atlas Data to proceed to discovery with unarticulated claims, it should first hold that the most obvious such claim – that Innovis's activities as a consumer reporting agency violate Daniel's Law – is preempted by the FCRA.

This Court has previously observed that the gist of Daniel's Law is that it forbids companies from "telling the world that Police Officer Jane Jones resides at 123 Main Street, Camden and can be reached at 609-000-0000." ECF 32 at 20. Innovis does not tell "the world" anything about Jane Jones, but it does use and share her address and phone number with consumers and third parties in specific contexts that are required and regulated by the Fair Credit Reporting Act. This Court should find that the FCRA preempts Daniel's Law and permits Innovis to continue the activities regulated by it.

In the alternative, the Court should order Atlas Data to plead an amended Complaint that puts Innovis and the NJAG on notice of what Innovis is doing that allegedly violates Daniel's Law, so that all parties and the Court can determine what the claims against Innovis are, and whether or not they are preempted.

/s/ Stephanie L. Jonaitis
Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Troutman Pepper Locke LLP
104 Carnegie Center Suite 203
Princeton, NJ 08540
T: 609-951-4118
E: Angelo.Stio@troutman.com
  Melissa.Chuderewicz.@troutman.com
  Stephanie.Jonaitis@troutman.com

-and-

Jason A. Spak (admitted *pro hac vice*)
Troutman Pepper Locke LLP
501 Grant Street, Suite 300
Pittsburgh, PA 15219
T: 412-401-2000
E: Jason.Spak@troutman.com
*Counsel for Innovis Data Solutions, Inc.*

## CERTIFICATE OF SERVICE

I certify that on July 28, 2025, I filed the foregoing MEMORANDUM with the Court's Electronic Case Filing (ECF) system, which will send a Notice of Electronic Filing (NEF) to, and thereby effect service upon, all parties through their counsel of record.

/s/ Stephanie L. Jonaitis
Stephanie L. Jonaitis
Troutman Pepper Locke LLP
