IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| WE INFORM, LLC, et al. | : | NO. 24-4037 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| INFOMATICS, LLC, et al. | : | NO. 24-4041 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| THE PEOPLE SEARCHERS, LLC,<br>et al. | : <br> : | NO. 24-4045 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| INNOVIS DATA SOLUTIONS INC.,<br>et al. | : <br> : | NO. 24-4176 |

| | | |
|---|---|---|
| ATLAS DATA PRIVACY<br>CORPORATION, et al. | : <br> : <br> : | CIVIL ACTION |
| v. | : <br> : | |
| RESTORATION OF AMERICA, et al. | : <br> : | NO. 24-4176 |

```
ATLAS DATA PRIVACY              :           CIVIL ACTION
CORPORATION, et al.             :
                                :
          v.                    :
                                :
SMARTY, LLC, et al.             :           NO. 24-8075
```

---

MEMORANDUM

Bartle, J.                                          August 25, 2025

       Plaintiffs have sued defendants for violations of a New Jersey statute known as Daniel's Law.  N.J.S.A. 56:8-166.1. Pursuant to this statute, judges, prosecutors, other law enforcement officers and certain family members, described in the statute as covered persons, may request that entities not disclose or make available their home addresses and unlisted telephone numbers.  If the entity is negligent in not complying with this request within ten business days, it may be held liable for damages, injunctive relief, and attorneys' fees.  See Atlas Data Priv. Corp. v. We Inform, LLC, 758 F. Supp. 3d 322, 341 (D.N.J. 2024).

       Defendants have moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaints on the grounds that Daniel's Law is preempted by the National Voter Registration Act, 52 U.S.C. §§ 20501, *et seq.*, the Communications Decency Act, 47 U.S.C. § 230, or the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*.  One defendant has

also moved to dismiss on the ground that Daniel's Law is
unconstitutional as applied under the First Amendment of the
United States Constitution.

I.

A court may grant a Rule 12(b)(6) motion based on an
affirmative defense.  However, "the predicate establishing the
defense [must be] apparent from the face of the complaint."
Brody v. Hankin, 145 F. App'x 768, 771 (3d Cir. 2005) (citing
Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 n. 10 (3d
Cir. 1978))(emphasis omitted).  According to the complaints,
defendants are entities which disclose and redisclose on the
internet or otherwise make available home addresses and
unpublished home telephone numbers of covered persons.
Defendants offer and engage in the disclosure of data and
information through one or more websites or applications.

Federal preemption of state laws arises from the
Supremacy Clause of the Constitution, which states that federal
law "shall be the supreme Law of the Land . . . any Thing in the
Constitution or Laws of any State to the Contrary
notwithstanding."  U.S. Const. art. VI, cl. 2.  Courts generally
have recognized three categories of preemption: (1) express
preemption; (2) conflict preemption; and (3) field preemption.
Treasurer of N.J. v. U.S. Dep't of Treasury, 684 F.3d 382, 406
(3d Cir. 2012).  Defendants here raise only the first two.

-3-

Express preemption exists where Congress expressly provides for preemption in a particular statute itself.  Pennsylvania v. Navient Corp., 967 F.3d 273, 287 (3d Cir. 2020).  Conflict preemption exists where it is not possible for a party to comply with both federal and state law or where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  Farina v. Nokia Inc., 625 F.3d 97, 122 (3d Cir. 2010).  Where federal and state law conflict, federal law, of course, prevails.  Fla. Lime & Avocado Growers v. Paul 373 U.S. 132, 142-43 (1963).

II.

Two defendants, Restoration of America ("Restoration") and Voter Reference Foundation ("VRF") move to dismiss the complaint against them on the ground that Daniel's Law is preempted by the National Voter Registration Act, ("NVRA") 52 U.S.C. §§ 20501, et. seq.  Restoration is a non-profit entity.  VRF, a subsidiary of Restoration, "obtains and publishes publicly available voter records" on its website, voteref.com.[1]  As defendants acknowledge, these voter records often include the home addresses of individual voters.[2]  They argue, however, that

---

1. Defendants in their motion to dismiss describe themselves in this manner.  Although the complaints do not do so, plaintiffs have not challenged this description.
2. Defendants state, and the court accepts for present purposes, that they do not make available unlisted telephone numbers.

Daniel's Law is inconsistent with the NVRA and thus invalid as
applied to them.

         The NVRA was enacted in 1993 to: "establish procedures
that will increase the number of eligible citizens who register
to vote in elections for Federal office"; "enhance[] the
participation of eligible citizens as voters in elections for
Federal office"; "protect the integrity of the electoral
process"; and "ensure that accurate and current voter
registration rolls are maintained."  52 U.S.C. § 20501(b).  To
do so, section 8(i) of the NVRA requires states to maintain and
"make available for public inspection and, where available,
photocopying at a reasonable cost, all records concerning the
implementation of programs and activities conducted for the
purpose of ensuring the accuracy and currency of official lists
of eligible voters. . . ." 52 U.S.C. § 20507(i)(1).  While our
Court of Appeals has yet to address what precisely constitutes
these records, other courts have agreed that voter lists and
accompanying information must be made available under the NVRA.
See, e.g., Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36,
47 (1st Cir. 2024); Project Vote/Voting for Am., Inc. v. Long,
682 F.3d 331, 336 (4th Cir. 2012); Voter Reference Found., LLC
v. Torrez, 727 F. Supp. 3d 1014, 1216 (D.N.M. 2024).

         Daniel's Law was enacted in 2020 and since amended to
"enhance the safety and security of certain public officials in

-5-

the justice system, including judicial officers, law enforcement officers, child protective investigators in the Division of Child Protection and Permanency, and prosecutors." N.J.S.A. 56:8-166.3. It provides to those individuals and their family members a private right of action against entities who make available their home addresses ten days after receiving a takedown request. N.J.S.A. 56:8-166.1.

Daniel's Law creates no obstacle to the aims of the NVRA. Daniel's Law allows but does not require individuals to protect their safety by requesting that their home addresses and unlisted telephone numbers not be made available by private actors. It does not prohibit the state of New Jersey from generally making available voter information to anyone who requests it. In contrast, the NVRA requires states to provide records to the public regarding compliance with election requirements. Allowing judges, prosecutors, and other law enforcement to protect their safety by requesting that their home addresses and unlisted telephone numbers not be published by private actors does not threaten "the integrity of the electoral process" or risk the maintenance of "accurate and current voter rolls." 52 U.S.C. § 20501(b). The NVRA does not prohibit what Daniel's Law authorizes. There is no conflict between these laws.

Defendants rely mainly on Public Interest Legal Foundation v. Bellows, which addresses the NVRA's emphasis on transparency in voter information.  92 F.4th at 54-55.  There, a non-profit organization dedicated to promoting "the integrity of elections" sued Maine's Secretary of State under the NVRA to gain access to and publish voter records generated by the state. Id. at 43.  A Maine statute with only narrow exceptions prohibited private parties from accessing voter records created by the state.  Id. at 43-44.  The statute also categorically barred those entities covered by the exceptions from publishing voter information after obtaining that information from the state.  Id.  The district court granted summary judgment for the non-profit.  It held that the Maine statute was preempted by the NVRA.  Id. at 44.  In affirming the district court, the Court of Appeals for the First Circuit explained that Maine's categorical bar on the publishing of state-generated voter records thwarted Congress's intent in promoting transparency.  Id. at 56.

The Court acknowledged, however, that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File." Id.  The Court further explained that the NVRA does not prohibit the "redaction of personal information that can be particularly sensitive . . . ."  Id.

Bellows is not helpful to defendants.  Unlike what
occurred in Maine, New Jersey's Daniel's Law does not
categorically bar the distribution and publishing of voter
information, and plaintiffs make no effort to do so.  As the
Bellows court explained, while the NVRA requires the broader
disclosure of voter lists, it does not prohibit the redaction of
sensitive personal information.  Again, Daniel's Law simply
allows a narrow group of individuals after notice and for their
own security to have their home addresses and unlisted telephone
numbers not disseminated.

The motion of defendants Restoration of America and
Voter Reference Foundation to dismiss on the ground that the
NVRA preempts Daniel's Law will be denied.

III.

Four defendants--We Inform, LLC, Infomatics, LLC, The
People Searchers, LLC, and Smarty, LLC--move to dismiss the
complaints against them under Rule 12(b)(6) on the ground that
plaintiffs' claims are preempted and thus barred under Section
230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C.
§ 230.

Congress enacted § 230 "in response to a state-court
decision which held that the provider of an online messaging
board could be liable for defamatory statements posted by third-
party users of the board."  Anderson v. TikTok, Inc., 116 F.4th

-8-

180, 183 n.7 (3d Cir. 2024) (quoting F.T.C. v. Accusearch, Inc., 570 F.3d 1187, 1195 (10th Cir. 2009)).  In so doing, Congress sought to immunize certain computer services from liability based on content posted by third parties.  Id. at 182-83.

Section 230(c)(1) of the CDA provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  Defendants maintain they fit within this provision and are thus immunized from liability under § 230(e)(3) which states: "No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with [§ 230]."

To succeed on their defense of immunity under the CDA, defendants must establish that: (1) they are users or providers of an interactive computer service; (2) the asserted claim seeks to treat them as publishers or speakers of challenged information; and (3) that challenged information is provided by another information content provider.  See Parker v. Google, Inc., 242 F. App'x 833, 838 (3d Cir. 2007); Pace v. Baker-White, 432 F. Supp. 3d 495, 503 (E.D. Pa. 2025); 47 U.S.C. § 230(c)(1). Unless defendants establish all three elements, their immunity and thus their defense under the CDA fail.

The court turns first to the question whether the information defendants publish is information provided by

-9-

another information content provider.  Section 230(f)(3) defines "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."

Importantly, § 230 immunizes a party from liability only for information provided by "<u>another</u> content provider." See 47 U.S.C. § 230(c)(1) (emphasis added); <u>F.T.C. v. Accusearch, Inc.</u>, 570 F.3d at 1197.  It is well settled that if a defendant operates an interactive platform and simply allows third parties to post content, it is immune from suit under § 230.  See <u>Anderson</u>, 116 F.4th at 183.  However, there is no immunity if the defendant creates or develops the information on its own platform.  See <u>id.</u>; <u>Accusearch</u>, 570 F.3d at 1197.  The CDA does not define "create" or "develop," although these words are not synonymous.  Courts should construe statutory language to avoid interpretations that would render any clause, sentence, or word superfluous.  <u>TRW Inc. v. Andrews</u>, 534 U.S. 19, 31 (2001).

The court at this early stage has little information about the activities of these four defendants relevant to CDA immunity.  The court is limited to the four corners of the complaint and of course any undisputed fact outside the complaint.  See <u>Schmidt v. Skolas</u>, 770 F.3d 241, 249 (3d Cir.

-10-

2014). At oral argument on the motions to dismiss, defendants candidly conceded that they do not operate platforms where third parties simply post information. Defendants seek out and compensate others for providing the home addresses appearing on their websites.

Even if defendants do not create the home addresses and unlisted telephone numbers of covered persons, the court has insufficient evidence in the record to determine whether they develop it. Defendants We Inform, Infomatics, and The People Searchers acknowledge in affidavits that they "provide comprehensive reports" to their consumers. Smarty similarly attached to its motion screenshots of its website, which state that Smarty "meticulously craft[s] personalized solutions tailored to every facet of [its] customers' business needs." The screenshots also provide that its service will "[f]ill in missing data & unlock additional information about any validated street address" that a user searches. To determine whether defendants develop the information in issue and whether they have immunity under the CDA must await discovery.

The motion of defendants We Inform, LLC, Infomatics, LLC, The People Searchers, LLC and Smarty, LLC to dismiss the complaints on the ground that they are immune from suit under the CDA will be denied.

-11-

IV.

Defendant Innovis also moves to dismiss the complaint against it on the ground that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*, preempts Daniel's Law. Under FCRA, entities called "consumer reporting agencies" ("CRA") gather consumer credit data, organize that data into credit reports--called consumer reports--and furnish those reports to commercial entities to assess a consumer's creditworthiness.  <u>Seamans v. Temple Univ.</u>, 744 F.3d 853, 860 (3d Cir. 2014).  FCRA regulates CRAs and the consumer reports they provide.  <u>Id.</u>

Plaintiffs conceded at oral argument that Innovis is a CRA under FCRA and furnishes consumer reports but assert that Innovis also conducts other activity.  Innovis, which agrees that one of its businesses is as a CRA, has moved to dismiss the complaint only to the extent plaintiffs seek to recover for its disclosure as a CRA of home addresses and unlisted telephone numbers.[3]  Innovis argues that two separate provisions of FCRA preempt Daniel's Law.

---

3. Innovis also seeks to dismiss the complaint to the extent plaintiffs seek to have covered persons' information removed from Innovis's records entirely.  This issue is moot.  The complaint seeks no such relief, and plaintiffs confirmed as much at oral argument.

First, pursuant to § 1681t(b)(1)(E), "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681c of this title, relating to the prescreening of consumer reports." Section 1681c, in turn, provides a list of information that CRAs like Innovis may not disclose on their consumer reports. Neither home addresses nor unlisted telephone numbers are included among § 1681c's prohibitions. Thus, Innovis argues, New Jersey may not through Daniel's Law restrict Innovis from including home addresses and unlisted telephone numbers on its consumer reports.

In response, plaintiffs assert that preemption does not apply because Innovis discloses home addresses and unlisted telephone numbers not on its consumer reports but rather as "credit header information." According to plaintiffs, FCRA does not regulate such information as it is not included in reports to apprise the recipient of the consumer's "creditworthiness, credit capacity, credit standing, character, general reputation, personal characteristics, or mode of living." See Individual Reference Servs. Grp., Inc. v. F.T.C., 145 F. Supp. 2d 6, 17 (D.D.C. 2001), aff'd sub nom., Trans Union LLC v. F.T.C., 295 F.3d 42 (D.C. Cir. 2002).

The court at this stage cannot decide this issue[4] as it is not clear from the face of the complaint in what manner Innovis discloses home addresses and unlisted telephone numbers on its consumer reports. If Innovis merely discloses home addresses and unlisted telephone numbers in the headers of its reports, such personal identifying information may fall outside FCRA's definition of consumer reports. See Adams v. LexisNexis Risk & Info. Analytics Grp., Inc., 08-cv-4708, 2010 WL 1931135, *11 (D.N.J. May 12, 2010). On the other hand, Innovis posits that home addresses and unlisted telephone numbers may have some bearing on a consumer's creditworthiness and thus may be included on a consumer report. See Sweet v. LinkedIn Corp., No. 14-cv-4531, 2015 WL 1744254, at *7 (N.D. Cal. Apr. 14, 2015). Discovery is needed before the court can resolve this issue.

Innovis further argues that FCRA preempts Daniel's Law because home addresses and telephone numbers are needed to match credit information about "John Smith" to the correct "John Smith." This argument is unpersuasive. Daniel's Law does not bar Innovis from performing this function, and plaintiffs do not

---

4. There appears currently to be a circuit split on this issue. The Court of Appeals for the First Circuit has held that states may impose additional restrictions not present in § 1681c, while the Court of Appeals for the Seventh Circuit has held the opposite. Compare Consumer Data Inus. Assoc. v. Frey, 26 F.4th 1, 24 (1st Cir. 2022) with Aldaco v. RentGrow, Inc., 921 F.3d 685, 688 (7th Cir. 2019).

-14-

contest such use.  Violations of Daniel's Law occur only after
this information is disclosed or made available to third
parties.  There is therefore no conflict between Daniel's Law
and FCRA in this regard.

Innovis next relies on § 1681t(b)(1)(A) of FCRA as
preempting Daniel's Law.  It provides that "[n]o requirement or
prohibition may be imposed under the laws of any State . . .
with respect to any subject matter regulated under . . .
subsection (c)or (e) of section 1681b of this title, relating to
the prescreening of consumer reports."

Sections 1681b(c) and (e) are different in kind from
those discussed previously.  They address the furnishing of
consumer reports in connection with credit or insurance
transactions initiated by creditors or insurers, not by
consumers.  Subsection (c) permits creditors and insurers to
purchase from CRAs pre-screened lists of names and addresses of
creditworthy consumers in order to send those consumers firm
offers of credit or insurance.  15 U.S.C. § 1681b(c)(1); see
also Sullivan v. Greenwood Credit Union, 520 F.3d 70, 74 (1st
Cir. 2008).

Subsection (e) allows consumers to remove their names
and addresses from these lists.  15 U.S.C. § 1681b(e)(1).[5]  This

_____

5. Section 1681b(e)(1) reads:

section dictates two mechanisms by which consumers may do so.
Consumers seeking to have their name and address expunged from
the lists "shall notify a consumer reporting agency" by either
calling a toll-free number provided by the agency under FCRA or
by submitting to the agency a statutorily prescribed form,
signed by the consumer, which the agency issues for this precise
purpose.  15 U.S.C. § 1681b(e)(2).[6]

Congress mandated that consumers seeking to remove
their information "shall" use one of these two methods to do so.
The word "shall" in a statute ordinarily indicates that a
command is mandatory.  See Alabama v. Bozeman, 533 U.S. 146, 153

---

A consumer may elect to have the consumer's
name and address excluded from any list
provided by a consumer reporting agency
under [FCRA's firm offer provisions] by
notifying the agency in accordance with
paragraph (2) that the consumer does not
consent to any use of a consumer report
relating to the consumer in connection with
any credit or insurance transaction that is
not initiated by the consumer.

6. Section 1681b(e)(2) reads:
A consumer shall notify a consumer reporting
agency under paragraph (1) . . . through the
notification system maintained by the agency
under paragraph (5) [requiring consumer
reporting agencies to provide a toll-free
telephone number for opt-out purposes]; or
. . . by submitting to the agency a signed
notice of election form issued by the agency
for purposes of this paragraph.

(2001); <u>Geisinger Comm. Med. Ctr. V. Sec. U.S. Dept. of Health and Human Servs.</u>, 794 F.3d 383, 394 (3d Cir. 2015).

It is appropriate here to apply the well-established canon of statutory interpretation, *expressio unius est exclusio alterius*, that is the inclusion of one is the exclusion of the other. The enumeration by Congress of these two specific methods of notification means that it did not intend for consumers to be able to use a third. The Supreme Court recently applied this canon in a similar circumstance in <u>Esteras v. United States</u>, 145 S. Ct. 2031, 2040-41 (2025).

FCRA and Daniel's Law are inconsistent with respect to the means and timing for removing a consumer's home address so as to prevent firm offers of credit or insurance. Under Daniel's Law, an oral notice is not sufficient and has no prescribed form of written notice. Daniel's Law has a grace period of ten days before the information is to be taken down while in FCRA it is five days. To the extent that Daniel's Law allows covered persons to remove their home addresses from lists provided by credit reporting agencies for firm offers of credit or insurance, it is preempted by FCRA. To this extent only, the motion of Innovis to dismiss the complaint will be granted.

V.

Finally, Innovis moves to dismiss the complaint on the ground that Daniel's Law is unconstitutional as applied. In its

reply brief, however, it acknowledged that the court "need not address the as-applied challenge at this time."  Discovery will be needed to resolve this issue.  The motion of Innovis to dismiss the complaint on the ground that Daniel's Law is unconstitutional as applied will be denied.

BY THE COURT:


/s/  Harvey Bartle III
                                                    J.