Angelo A. Stio III
Melissa A. Chuderewicz
Stephanie L. Jonaitis
Troutman Pepper Locke LLP
104 Carnegie Center Suite 203
Princeton, NJ 08540
T:  609-951-4118
Angelo.Stio@troutman.com
Melissa.Chuderewicz.@troutman.com
Stephanie.Jonaitis@troutman.com

Jason A. Spak (admitted *pro hac vice*)
Troutman Pepper Locke LLP
501 Grant Street, Suite 300
Pittsburgh, PA 15219
T:  412-347-1247
Jason.Spak@troutman.com

Attorneys for Defendant *Innovis Data Solutions, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Atlas Data Privacy Corp., *et al*., <br> Plaintiffs, <br> v. <br><br> Innovis Data Solutions, Inc., *et al*., <br> Defendants. | (Electronically Filed) <br><br> Civil Action No. 1:24-cv-04176-HB <br><br> Hon. Harvey Bartle III |

## DEFENDANT INNOVIS'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Innovis Data Solutions, Inc. pleads as follows:

## INTRODUCTION

1.  In these tumultuous times, it is critical that the most sensitive personal information of those who serve the public be protected from unwarranted disclosure. As set forth below, Daniel's Law was passed unanimously by our Legislature to provide judges, law enforcement officers, and prosecutors — and their families — with the right to prevent the disclosure of their home addresses and unpublished home telephone numbers, and to enforce those rights against uncooperative profit-seeking data brokers.

**INNOVIS'S RESPONSE:**       Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

2.       This complaint seeks to protect those important rights, against companies brokering data and choosing profit and personal gain over a critical public interest and the unequivocal mandate of the law. Companies in the business of disclosing this protected information have avoided accountability for far too long, proffering such information, including home addresses and unpublished home telephone numbers, without sufficient regard for the risks and consequences imposed upon individuals who serve critical judicial and law enforcement roles.

**INNOVIS'S RESPONSE:**       Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

3.       The Legislature and Governor unanimously agree that the basic safety of those who serve — and their families — must be assured. Here, not only do the data brokers wantonly and repeatedly disregard the law, but they also demonstrate a callousness towards the well-being of those who serve. Our judges, law enforcement officers and prosecutors should receive the full measure of protection afforded to them under the same laws they enforce for the safety of all citizens.

**INNOVIS'S RESPONSE:**       Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

4.      With this action, Plaintiffs seek to enforce the important rights granted to judges, law enforcement officers, and prosecutors under Daniel's Law. Consistent with the statutory provisions, Atlas brings this action as an assignee for certain individuals, including many family members of law enforcement officers and prosecutors. Plaintiffs seek all available injunctive relief and statutory damages, including to prevent any further disclosure by Defendants of information in violation of Daniel's Law.

**INNOVIS'S RESPONSE:**      Innovis denies that it has violated Daniel's Law and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

## BACKGROUND

### Passage of Daniel's Law in New Jersey

5.      In July 2020, Daniel Anderl, the son of a New Jersey federal Judge, was shot dead by a gunman posing as a FedEx delivery man at the front door of the family's New Jersey home. Daniel, who was just age 20 and a rising junior in college, and who aspired to practice law like his parents, took a bullet to his chest trying to protect his parents. By the time his mother, a Judge, came to the door to check on what happened, the killer was gone. But her husband was critically wounded, and Daniel tragically died from the gunshot.

**INNOVIS'S RESPONSE:**      Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

6.     During the investigation, the perpetrator was found to have certain political and personal grievances against the Judge, and went to their home that day intending to kill her. Instead, he murdered the Judge's son and almost succeeded in killing her husband as well. Investigators eventually connected this attack with another shooting of an attorney in California, who was similarly mortally gunned down answering the door to his residence to pick up a supposed package from the same disguised gunman. Authorities concluded that the shooter was disgruntled over certain legal cases with similar political and legal issues to what was pending before Daniel's mother.

**INNOVIS'S RESPONSE:**     Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

7.     Critically, the gunman was able to find the home addresses of both of his murder victims through the various people finder resources available on the internet, the same kind of data broker services at issue in this case.

[FN1:     https://www.cbsnews.cominews/esther-salas-son-murder-roy-den-hollander-48-hours/].

**INNOVIS'S RESPONSE:**     Innovis denies that it provides "people finder resources available on the internet" and denies that the services that it does provide are "the same kind of data broker services" that "the gunman" used "to find the home addresses of both of his murder victims." Innovis lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

8.      In response to the shooting of Daniel, New Jersey enacted Daniel's Law within a few months, in November 2020 (P.L. 2020, c. 125 *codified in* N.J.S.A. 47:1A-1, et seq. and N.J.S.A 56:8-166.1), which prohibits online data brokers from selling, publishing, and distributing the name and address of current and former judges, law enforcement officers, and prosecutors and their eligible family members (i.e., "covered persons"), upon any written request by the covered person. Law enforcement personnel are expressly covered by the statute, in full recognition that the public service they provide is no less dangerous or important than those of Judges and prosecutors.

**INNOVIS'S RESPONSE:**      Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

9.      Any such covered person may request that a data broker not "disclose or re-disclose on the Internet or otherwise make available" their home addresses or unpublished home telephone numbers. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed." Data brokers must cease disclosure of this protected information within 10 business days of receiving a nondisclosure request from a covered person.

**INNOVIS'S RESPONSE:**      Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

### Congress Passes Daniel Anderl Judicial Security and Privacy Act in 2022

10.      Similar to the actions taken by the State of New Jersey, federal judges such as U.S. Supreme Court Chief Justice John G. Roberts Jr. proposed and supported a federal version of Daniel's Law. The Chief Justice was quoted stating, "[t]he law requires every judge to swear an oath to perform his or her work without fear or favor, but we must support judges by ensuring their safety ... [a] judicial system cannot and should not live in fear." [FN2]

[FN2: https://www.washingtonpost.com/politics/2022/12/31/supreme-court-roberts-leak-report/].

**INNOVIS'S RESPONSE:**      Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

11.      The federal bill, which had broad bipartisan support in both the House and Senate, protected judges' personally identifiable information from resale by data brokers. It allowed federal judges to redact their personal information displayed on federal government internet sites.

**INNOVIS'S RESPONSE:**      The "federal bill" (Daniel Anderl Judicial Security and Privacy Act, Pub. L. No. 117-263 § 5931, *et seq*.) speaks for itself and is

the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history. By way of further response, Innovis states that:

• The "federal bill" specifically excludes "A consumer reporting agency subject to the Fair Credit Reporting Act" and "A financial institution subject to the Gramm-Leach-Bliley Act" from its definition of "Data Broker." Pub. L. No. 117-263 § 5933(3)(B)(v-vi). Innovis is subject to both of those exclusions.

• The "federal bill" states that "no person, business, or association shall publicly post or publicly display on the internet covered information of an at-risk individual or immediate family member." *Id.* at § 5934(d)(B)(i). Plaintiffs' Complaint does not and cannot allege that Innovis publicly posts or publicly displays home addresses and phone numbers.

12. The U.S. Senate voted 83-11 to pass the annual defense authorization bill, with the Daniel Anderl Judicial Security and Privacy Act attached, [FN3] and it was signed by President Biden. [FN4]

[FN3: https://www.uscourts.gov/news/2022/12/16/congress-passes-daniel-anderl-judicial-security-and-privacy-act].

[FN4: https://www.nj.com/politics/2022/12/biden-signs-defense-policy-bill-that-remembers-3-new-jerseyans.html].

**INNOVIS'S RESPONSE:**        Innovis repeats its response to Paragraph 11 and incorporates that response by reference. Innovis lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

### Violence Against Police Officers and Judges Has Not Stopped

13.     Judges, law enforcement officers, and prosecutors put their lives on the line every day, which is clearly exhibited by numerous horrific stories of violence beyond the story of the murder of Daniel Anderl. For example, in 2020, three shooters openly fired upon the Camden home of two New Jersey police officers and their 10-day old infant. That the officers were constantly involved in the community doing good afforded them no safety from the perpetrators. [FN5]

[FN5: Shooters Open Fire On Home Of New Jersey Police Officers In 'Targeted Attack,' Chief Says (forbes.com)].

**INNOVIS'S RESPONSE:**        Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

14.     More recently, another perpetrator hunted and killed in cold blood a Maryland Judge, after a child custody ruling. [FN6] The killing followed that of a Wisconsin Judge in 2022, where the perpetrator killed the retired Judge out of spite for his handling of a criminal case in 2005. [FN7]

[FN7: Former Judge John Roemer was killed in his Wisconsin home in a targeted attack, officials say ‖ CNN].

**INNOVIS'S RESPONSE:**     Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

## THE PARTIES

### The Individual Plaintiffs

15.     Plaintiff JANE DOE-1, whose name has been anonymized for safety reasons, is a decorated veteran police officer working in Northern New Jersey. Between 2021 and 2022, Officer Doe-1 participated in a task force that targeted a major criminal organization operating in the state. Her efforts ultimately led to the arrest and prosecution of a member of the organization's leadership, an individual with an extensive criminal history including threats of violence. In the subsequent investigation, digital devices recovered from the organization's leadership were analyzed and photographs of Officer Doe-1's personal residence were identified. Officer Doe-1 lives in the home with her spouse and their young child. Evidence recovered in the investigation included night-time photography of the young child's bedroom and playroom windows, with the light on while the child was playing inside. Further investigation revealed that the criminal organization's leadership had hired a private investigator who searched online data broker websites to obtain the officer's home address. Having identified her home address, text messages confirmed that they had initiated surveillance and were tracking Officer Doe-l's movements to and from her home, immediately prior to the task force initiating arrests.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

16.    Plaintiff JANE DOE-2, whose name has been anonymized for safety reasons, is a veteran correctional police officer who lives in Northern New Jersey with her husband and two young children. Earlier in her career, Officer Doe-2 was the subject of a death threat from a hostile inmate. The inmate stated that they intended to kill Officer Doe-2, and further implied that they would rely upon a particular private investigator to track down Officer Doe-2's home address to facilitate the murder. This death threat was investigated and considered credible enough to result in a successful criminal prosecution. Part of Officer Doe-2's current duties include working in her correctional facility's law library, where inmates have access to the Internet including online data broker websites and services. Recently Officer Doe-2 and her coworkers discovered a note left behind by an inmate which included the full name and home address of a young female member of the jail's administrative staff. The most effective ways to safeguard the security and privacy of their home addresses - for their own safety and that of their family members - is a frequent topic of discussion and concern among the correctional police officers working at Officer Doe-2's facility.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

17.     Plaintiff Officer EDWIN MALDONADO joined the Plainfield, New Jersey police department as a patrol officer in 2000. After a few months on the job, he was assigned to street crimes, where he excelled at field work. In 2005, he became a Detective with Plainfield's major crimes unit and joined a Federal task force targeting the Mara Salvatrucha-13 (MS-13) gang in New Jersey. He worked with the task force for the next two years. During that time period, he received multiple credible death threats from MS-13 members. Detective Maldonado did not believe he would be able to safeguard his home address while living in Plainfield and relocated his family to a remote location from which he commuted to work. In 2009, because his relocation effort had been successful and MS-13 could not locate his new home address, gang members targeted Detective Maldonado's mother instead. They intended to burn down her building with her inside, but set fire to an adjacent building by mistake. Phone calls between MS-13 members discussing the premeditated murder of Detective Maldonado and his family, and the premeditated murder of Detective Maldonado's mother, were intercepted by jail wiretaps. Later in multiple criminal trials, evidence was entered into the record regarding these intercepted conversations and premeditated murders, contributing to numerous successful prosecutions.

**INNOVIS'S RESPONSE:**     Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

18.    Plaintiffs Sergeant SCOTT MALONEY ("Sergeant Maloney") and Officer JUSTYNA MALONEY ("Officer Maloney") are husband and wife, both veteran police officers currently serving with the Rahway, New Jersey Police Depth latent. They live together in New Jersey with their two young children. In April of 2023, Officer Maloney responded to a routine call of a suspicious individual outside the Motor Vehicle Commission in Rahway. The individual was an online content creator who often solicits police contact and then films himself debating constitutional rights with the responding officers. A subset of the content creator's audience is vocally anti-police and videos posted to his social media channel have historically been the source of harassment and intimidation campaigns directed at the officers involved. In this case, Officer Maloney and several other responding officers were filmed discussing a number of legal issues with the content creator, including whether or not the content creator was required to take his hands out of his pockets to show that he was unarmed. Overall, the encounter was routine and ended uneventfully.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

19.    The resulting video footage was selectively edited and posted to YouTube. Almost immediately upon the video being posted, Officer Maloney was targeted by followers of the channel and other individuals who viewed the video. Sergeant Maloney was quickly identified by viewers as Officer Maloney's husband, and became a target

himself, due to their relationship as a married couple and his own status as a police officer. Web links to data broker websites publicly disclosing the Maloney family's home address and unpublished home telephone numbers were posted along with explicit death threats and calls for violence, resulting in dozens of threatening phone calls and text messages.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

20.    One of the text messages sent to Sergeant Maloney demanded money and stated that if Sergeant Maloney did not comply then his family would "pay in blood." The unknown messenger went on to state that they knew where the Maloneys lived and sent the full name and home address of one of the Maloneys' nearby relatives as proof of the messenger's ability to gather sensitive personal information. Sergeant Maloney refused to comply with any demands. He then received a video of three individuals in ski masks armed with handguns and assault rifles repeating the extortion demand. In part of the video, a masked individual points a rifle at the camera and tells Sergeant Maloney that his family is "going to get [their] heads cut off."

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

21.    Several weeks later, one of the Maloneys' neighbors observed two suspicious looking individuals in ski masks parked one block away from the home and

alerted police. Responding officers arrested two men - who were armed - for unlawful possession of a firearm. Video surveillance captured by nearby houses shows the two men circling the Maloneys' house immediately prior to their arrest. Officer Maloney and her two young children were at home at the time.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

22.    Plaintiff Detective PATRICK COLLIGAN is a 32-year veteran of the Franklin Township police department in Somerset, New Jersey. Since 2014, Detective Colligan has served as the President of the New Jersey State Policemen's Benevolent Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. The seriousness of certain threats necessitated the installation of a surveillance camera system and alarm system, and training for his spouse and children about how to respond in the event of an attack on their home.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

23.    Plaintiff Officer PETER ANDREYEV is a 32-year veteran of the Point Pleasant, New Jersey police department. Officer Andreyev currently services as the Executive Vice President of the New Jersey State Policemen's Benevolent

Association, representing more than 33,000 active law enforcement officers throughout the state. During the course of his law enforcement career, he has received numerous threats of violence targeted at him and his family as a result of his public service. Officer Andreyev has counseled many other officers who have been the target of violent threats on ways to protect themselves and their family members from harm. whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**INNOVIS'S RESPONSE:**     Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

24.     Plaintiff Officer WILLIAM SULLIVAN is an 18-year veteran of the New Jersey Department of Corrections. Since 2020, Officer Sullivan has served as the President of New Jersey PBA Local 105, the labor union representing thousands of correctional police officers from the New Jersey Department of Corrections, the Juvenile Justice Commission, and State Parole. During the course of his law enforcement career, he has received numerous threats of violence directed at him and his family as a result of his public service. Inmates incarcerated within New Jersey's state prisons frequently attempt to discover the protected information of correctional officers working in their facility. These attempts and the risks posed by such information being accessible on the Internet is a frequent topic of discussion and concern among correctional officers and

their family members. Officer Sullivan has counseled many officers whose protected information has been discovered and has responded to specific incidents where protected information was used by ex-inmates to threaten, harass, or intimidate fellow officers.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

### Plaintiff Atlas and its Assignors

25.    Plaintiff ATLAS DATA PRIVACY CORPORATION is a Delaware corporation, with offices at 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

26.    As permitted under Daniel's Law, Atlas asserts claims against Defendants as the assignee of the claims of approximately 19,599 individuals who are all "covered persons" under Daniel's Law (together, the "Covered Persons"), including a significant number of individuals who are family members of judges, law enforcement officers, and prosecutors.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

27.    The Covered Persons include individuals who reside, work or had previously resided or worked in New Jersey, and qualify as "covered persons" as

that term is defined under Daniel's Law, each of whom have claims against Defendants for failing to comply with Daniel's Law.

**INNOVIS'S RESPONSE:**        Innovis denies that it has violated Daniel's Law and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

28.    As set forth in more detail below, the Covered Persons (as well as the Individual Plaintiffs) each exercised their rights under Daniel's Law by sending Defendants a written notice requesting that Defendants cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure.

**INNOVIS'S RESPONSE:**        Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

29.    Defendants have not responded to these notices and, upon information and belief, have not complied with the law by ceasing the disclosure or re-disclosure on the Internet or the otherwise making available of protected information as required under Daniel's Law for each of the Covered Persons (as well as each of the Individual Plaintiffs) as required by the law.

**INNOVIS'S RESPONSE:**        Innovis denies that it has violated Daniel's Law and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

30.    In accordance with Daniel's Law, each of the Covered Persons has assigned their rights for claims thereunder against Defendants to Atlas.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

31.    Atlas provides an online platform, including an email service named AtlasMail, to law enforcement officers, prosecutors, judges, and other covered persons. Atlas works with and provides access to its platform to members of the New Jersey State Policemen's Benevolent Association, the Metropolitan Transportation Authority Police Benevolent Association, New Jersey PBA Local 105, and the New Jersey State Troopers Fraternal Association, among others. The goal of these unions and associations, since the first passage of Daniel's Law in November 2020, was to increase the safety and well-being of their members and associated households by helping those members to understand and assert the rights provided to them by the law.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

32.    Upon signing up for Atlas, a law enforcement officer or other Covered Person is asked a series of questions to collect required personal information and qualify their eligibility as a covered person under Daniel's Law. Once eligibility is confirmed, they are shown a page explaining how the Atlas platform works:

## How Atlas Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your home address or phone number. Atlas provides you with tools and services to help make the process more efficient.

1  **We identify data brokers that may be disclosing your personal information.** As of January 2024, our system tracks over 1,000 data brokers who operate in the United States.

2  **You select the data brokers to whom you want to send takedown notices.** We have lists of data brokers that we recommend, in order to make the selection process easier and more efficient. Alternatively, you can select recipients individually.

3  **You review takedown notice templates.** AtlasMail provides you with templates for takedown notice emails.

4  **You send takedown notices.** Your Atlas service includes an AtlasMail email address. You can use this email address to send takedown notices. More information about AtlasMail will be on the next screen.

Back                                        

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

33.    AtlasMail is an email service operated by Atlas. Upon signing up with Atlas, each law enforcement officer or other Covered Person receives their own AtlasMail account, with a unique inbox address (e.g. john.doe23@atlasmail.com) for their personal use. A description of AtlasMail and more information about how the email service works are provided on a page during the signup process:

## How AtlasMail Works

Daniel's Law allows you to send takedown notices to data brokers requesting that they not disclose or redisclose your sensitive personal information.

Atlas has created an email service, called **AtlasMail**, for its members to use for this purpose.

✓  Upon completing this signup process, a new email account will be created for your personal use. It will be:
   **john.doe23@atlasmail.com**

✓  You can access this email account from within the Atlas web application.

✓  This email account belongs to you and you can use it however you want, within certain anti-spam and similar limitations imposed by our terms of service.

Back                                    

**INNOVIS'S RESPONSE:**        Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

34.     Having provided personal information, confirmed their eligibility for Daniel's Law, and progressed through several pages explaining the functions of Atlas as a platform and AtlasMail as an email service, the law enforcement officer or other Covered Person is then presented with a page on which they can review their home addresses and unpublished home telephone numbers, a takedown notice template, and a recommended list of data brokers to send notices to. On this page the law enforcement officer or other Covered Person can choose whether or not to send takedown notices. If they choose not to send takedown notices to the recommended

list, they can select individual recipients at a later page (as shown in the example copied below). Here, each of the Individual Plaintiffs and Covered Persons sent Defendants a takedown notice.



**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations. By way of further response, Innovis states that the image pasted into Paragraph 34 references website addresses that Innovis does not maintain or control and with which Innovis has no affiliation.

35.    Any reply or response back from a data broker to the law enforcement officer or other Covered Person is received and displayed in their AtlasMail inbox. AtlasMail is a fully featured email service provider, and its users can reply, forward, or use their AtlasMail account as they would any other email account:





**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

36.    With this lawsuit, Atlas seeks to enforce compliance with Daniel's Law for those Covered Persons. This lawsuit seeks to protect their privacy without unnecessarily putting those individuals in the spotlight. Atlas will work with the Court and Defendants to implement a protective order to then provide Defendants with the assignments and other information for each of the Covered Persons.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

**Defendants**

37.    Defendant Innovis Data Solutions, Inc. is an entity that discloses or re-discloses on the Internet or otherwise makes available the home addresses and/or unpublished home telephone numbers of covered persons.

**INNOVIS'S RESPONSE:**       Innovis admits only that it discloses or otherwise makes available personal identifying information, including home addresses and/or unpublished home telephone numbers, when:

• Innovis is acting as a "consumer reporting agency" (15 U.S.C. § 1681a(f)) and providing that information to entities that Innovis, through a detailed credentialing and due diligence process, has determined to have a "permissible purpose" (15 U.S.C. § 1681b(a)) to obtain that information, and that "identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose" (15 U.S.C. § 1681e(a));

• Innovis is acting as a "consumer reporting agency" (15 U.S.C. § 1681a(f)) and providing a consumer a file disclosure from Innovis as required by 15 U.S.C. § 1681g and § 1681h.

• Innovis is acting as a "financial institution" (15 U.S.C. § 6809(3)) and disclosing nonpublic personal information to entities that Innovis, through a detailed credentialing and due diligence process, has determined will use such information for one of the uses identified in 15 U.S.C. § 6802(e), including "to protect against or prevent

actual or potential fraud, unauthorized transactions, claims, or other liability" (15 U.S.C. § 6802(e)(3)(B)) and "as necessary to effect, administer, or enforce a transaction requested or authorized by the consumer or in connection with" one or more of the purposes delineated at 15 U.S.C. § 6802(e)(1)(A-C), and that enter into a contractual agreement agreeing to such limited use; or

- Innovis is otherwise acting in accordance with relevant law.

Innovis lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

38.    Defendants Richard Roes 1-10 and ABC Companies 1-10 (collectively with the defendants identified above referred to as the "Defendants") are fictitious names of currently unknown individuals/entities that were also involved with the violations described in this Complaint who have not yet been identified in part due to what appears to be intentional efforts by data brokers to conceal the specific entities involved and responsible for the disclosure of data and information, and individuals responsible for Defendants [sic] failures to comply with the law.

**INNOVIS'S RESPONSE:**      Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.  By way of further response, Innovis denies that it failed to comply with Daniel's Law.

39.    Defendants offer and engage in the disclosure of data and information through one or more websites or applications, or otherwise in New Jersey, and to

businesses and individuals who operate or reside in New Jersey. Those websites include:

innovis.com

**INNOVIS'S RESPONSE:** Innovis admits that any person, including a covered person, can use the internet via innovis.com to request his or her own consumer file disclosure from Innovis while providing proper identification pursuant to 15 U.S.C. § 1681g and § 1681h. Innovis admits that, when permitted by law, it may disclose data and information to entities that operate or reside in New Jersey and elsewhere, through secure mechanisms that do *not* include innovis.com. Innovis denies that any such entity can use the internet via innovis.com to obtain data or information about any other person. Innovis denies that any such entity can obtain information about a person's home address or telephone number from Innovis unless that entity makes a request that complies with and is authorized by existing laws, including but not limited to the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act. Innovis denies that it provides information about a person's home address or telephone number except as authorized by existing laws, including but not limited to the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act. Innovis lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

40. In accordance with Defendants' business model, visitors, users, or customers may obtain a name and home address and/or a name and unpublished

home telephone number (including the name and address and/or unpublished home telephone number of the Individual Plaintiffs and Covered Persons).

**INNOVIS'S RESPONSE:** Innovis incorporates its response to Paragraphs 37 and 39 by reference and denies the allegations in Paragraph 40 to the extent that they are inconsistent with Innovis's response to Paragraphs 37 and 39.

41.    Daniel's Law was passed to protect those who serve from the disclosure of this protected information by such services, which disclose such information of the Individual Plaintiffs and Covered Persons for their own commercial interests, without sufficient regard to the risks and consequences imposed on individuals.

**INNOVIS'S RESPONSE:** Innovis denies that it has violated Daniel's Law and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

## JURISDICTION AND VENUE

42.    This Court has jurisdiction because the parties reside and/or conduct business in New Jersey, along with the Covered Persons, and the unlawful actions complained of herein occurred in New Jersey.

**INNOVIS'S RESPONSE:** Innovis denies that it took any "unlawful actions" in New Jersey or elsewhere and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations.

43.    Venue is proper pursuant to R. 4:3-2, in that Morris County is the county in which one or more of the parties and/or Covered Persons reside and/or conduct business. In addition, many of the events giving rise to this action occurred in this County.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

## FACTS COMMON TO ALL COUNTS

44.    As set forth above, New Jersey enacted Daniel's Law in November 2020 (P.L. 2020, c. 125 *codified as* N.J.S.A. 47:1A-1, et seq. and N.J.S.A. 56:8-166.1).

**INNOVIS'S RESPONSE:**    Innovis admits that New Jersey enacted Daniel's Law and admits that the current text of Daniel's Law can be found at N.J.S.A. 47:1A-1, *et seq*. and N.J.S.A. 56:8-166.1.  Innovis lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

45.    Daniel's Law prohibits data brokers from disclosing or re-disclosing on the Internet or otherwise making available the home addresses or unpublished home telephone numbers of covered persons as defined in the law, upon a written request by those individuals.

**INNOVIS'S RESPONSE:**       Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

46.    Upon notification, and no later than 10 business days after receipt, a data broker must not disclose or re-disclose on the Internet or otherwise make available the home addresses or unpublished home telephone numbers of the covered person.

**INNOVIS'S RESPONSE:**       Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

47.    This includes a mandate that within 10 business days of receiving a nondisclosure request, the data broker shall not disclose the protected information of the covered person. Disclosure is defined to mean to "solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise, or offer, and shall include making available or viewable within a searchable list or database, regardless of whether a search. of such list or database is actually performed."

**INNOVIS'S RESPONSE:**       Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

48.    Daniel's Law was amended in 2023, as P.L. 2023, c. 113. The amendment was passed unanimously by the Assembly on May 25, 2023, by the Senate on June 20, 2023, and was thereafter signed by the Governor on July 20, 2023.

**INNOVIS'S RESPONSE:**    Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

49.    Certain provisions of the amended law, including changes to N.J.S.A. 56:8-166.1, went into effect immediately.

**INNOVIS'S RESPONSE:**    Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

50.    As of July 20, 2023, Daniel's Law as codified in N.J.S.A. 56:8-166.1 provided:

> 3.a. (1) Upon notification pursuant to paragraph (2) of this subsection, and not later than 10 business days following receipt thereof, a person, business, or association shall not disclose or redisclose on the Internet or otherwise make available, the home address or unpublished home telephone number of any covered person, as defined in subsection d. of this section.
>
> b. A person, business, or association that violates subsection a. of this section shall be liable to the covered person, or the covered person's assignee, who may bring a civil action in the Superior Court.
>
> c. The court shall award:
>
> (1) actual damages, but not less than liquidated damages computed at the rate of $1,000 for each violation of this act;

(2) punitive damages upon proof of willful or reckless disregard of the law;

(3) reasonable attorney's fees and other litigation costs reasonably incurred; and

(4) any other preliminary and equitable relief as the court determines to be appropriate.

d. For the purposes of this section:

..."Disclose" shall mean to solicit, sell, manufacture, give, provide, lend, trade, mail, deliver, transfer, post, publish, distribute, circulate, disseminate, present, exhibit, advertise or offerand shall include making available or viewable within a searchable list or database, regardless of whether a search of such list or database is actually performed."

[FN8: https://pub.njleg.state.nj.us/Bills/2022/PL23/113_.PDF].

**INNOVIS'S RESPONSE:**        Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history.

51.    Starting on or about January 9, 2024, each of the Individual Plaintiffs and all of the Covered Persons (who assigned claims to Atlas) sent Defendants written nondisclosure requests (via email) in accordance with Daniel's Law, using AtlasMail.

**INNOVIS'S RESPONSE:**        Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

52.    For example, a true and correct copy of the email directly from Plaintiff Sullivan (with personal information redacted) is pasted here:



**Data Subject Request – Redaction/nondisclosure Request**

| | |
|---|---|
| **To** | privacy@innovis.com |
| **From** | William Sullivan <▮▮▮▮▮▮▮▮@atlasmail.com> |
| **Date** | Thu, Jan 18, 2024 8:33 PM UTC-0500 |

Innovis
January 19, 2024

To Whom It May Concern:

I am a "Covered Person" as defined by New Jersey law P.L. 2023, c.113, P.L.2021, c.371 (as amended, the "Act"). Pursuant to the Act and Section 3 of New Jersey P.L.2015, c.226 (C.56:8-166.1) (as amended), I hereby request that you not disclose or re-disclose on the Internet or otherwise make available, the following protected information:

Name: William Sullivan

Home Address: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Sincerely,
William Sullivan

**INNOVIS'S RESPONSE:**       Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

53.    Defendants failed to respond to these notices and, upon information and belief, cease the disclosure or re-disclosure on the Internet or the otherwise making available of the protected information of the Individuals Plaintiffs [sic] and Covered Persons within the time period required by Daniel's Law.

**INNOVIS'S RESPONSE:**       Innovis denies that Daniel's Law required any recipients of "these notices" to send a response to them.  Innovis lacks knowledge or information sufficient to form a belief about the truth of the allegation that it received the notice identified in Paragraph 52 or any other specific notice, such that Innovis lacks knowledge or information sufficient to form a belief about the truth of the allegation that it "failed to respond to these notices."  Innovis denies the remaining allegations in

Paragraph 53 for the reasons set forth in Innovis's response to Paragraph 39, and Innovis incorporates its response to Paragraph 39 by reference.

54.    All of the Covered Persons who sent their nondisclosure requests to Defendants (not including the Individual Plaintiffs) have assigned their claims against Defendants to Atlas.

**INNOVIS'S RESPONSE:**     Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

55.    The Individual Plaintiffs and Atlas hereby assert claims against Defendants based on their violation of Daniel's Law and continuing refusal to comply with that law.

**INNOVIS'S RESPONSE:**     Innovis denies that it violated Daniel's Law and lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

## <u>COUNT ONE</u>

### (Daniel's Law)

56.    The allegations of the Complaint set forth above are included herein as if set forth at length.

**INNOVIS'S RESPONSE:**     Innovis repeats its responses to Paragraphs 1-55 and incorporates those responses by reference.

57.    The Individual Plaintiffs and Covered Persons transmitted notice in writing to Defendants requesting that Defendants cease disclosure of their home address and/or unpublished home telephone number and cease its disclosure or re-disclosure on the Internet or wherever Defendants otherwise made it available.

**INNOVIS'S RESPONSE:**    Innovis lacks knowledge or information sufficient to form a belief about the truth of these allegations.

58.    Defendants had an obligation under Daniel's Law to comply with the request within ten (10) business days.

**INNOVIS'S RESPONSE:**    Daniel's Law speaks for itself and is the best source of its terms, and Innovis denies these allegations to the extent that they contradict or are inconsistent with the plain text of the statute and its legislative history, and to the extent that any obligations putatively imposed by Daniel's Law are preempted by existing law. Innovis lacks knowledge or information sufficient to form a belief about the truth of any remaining allegations.

59.    As of the date of this filing, upon information and belief, Defendants still refuse to comply with Daniel's Law. Upon information and belief, the protected information (including home addresses and/or unpublished home telephone numbers) of the Individual Plaintiffs and the Covered Persons remains "available or viewable within a searchable list or database" or otherwise made available.

**INNOVIS'S RESPONSE:**    Innovis denies the allegation that it "refuse[s] to comply with Daniel's Law."  Innovis denies the remaining allegations in Paragraph 59 for the reasons set forth in Innovis's responses to Paragraphs 37 and 39, and Innovis incorporates its responses to Paragraphs 37 and 39 by reference.

60.    Upon information and belief, Defendants did not cease the disclosure or re-disclosure on the Internet or the otherwise making available of information as required under Daniel's Law, and their failure in doing so each constitute a separate violation under the law.

**INNOVIS'S RESPONSE:**    Innovis denies the allegation that it violated Daniel's Law.  Innovis denies the remaining allegations in Paragraph 60 for the reasons set forth in Innovis's responses to Paragraphs 37 and 39, and Innovis incorporates its responses to Paragraphs 37 and 39 by reference.

61.    As a result of Defendants' failures to comply with Daniel's Law, Plaintiffs have suffered damages, and request all available relief.

**INNOVIS'S RESPONSE:**    Innovis denies the allegation that there are "failures to comply with Daniel's Law" that pertain to it.  Innovis denies that "Plaintiffs have suffered damages" due to Innovis's actions or omissions.  Innovis denies any remaining allegations in Paragraph 59 for the reasons set forth in Innovis's responses to Paragraphs 37 and 39, and Innovis incorporates its responses to Paragraphs 37 and 39 by reference.

## **AFFIRMATIVE DEFENSES**

Pursuant to Federal Rule of Civil Procedure 8(c), and without assuming any burdens of proof or persuasion that would otherwise rest on Plaintiff, Innovis asserts the following additional or affirmative defenses.

I.      Plaintiffs have failed to state a claim against Innovis for which relief may granted.

II.     Plaintiffs' claims are barred in whole or in part because one or more Plaintiffs lack standing to pursue their claims.

III.    Innovis complied, in good faith, with the Fair Credit Reporting Act, Gramm-Leach-Bliley Act, and all other relevant law, including the New Jersey and federal Daniel's Laws.

IV.     At all relevant times, Innovis's actions were reasonable and were the actions that a reasonable and prudent person would have taken under the circumstances.

V.      Plaintiffs have not suffered any damages due to Innovis's conduct.

VI.     Daniel's Law may not be enforced against Defendant because it facially violates the United States and/or New Jersey Constitutions.  Alternatively, application of Daniel's Law against Defendant under the facts of this case would violate the United States and/or New Jersey Constitutions.

320710482v2

VII.   New Jersey's Daniel's Law is preempted by preexisting federal law, including but not limited to the Fair Credit Reporting Act and the Gramm-Leach-Bliley Act.

VIII.   The takedown requests that Plaintiffs allegedly submitted were not authorized by, or made in accordance with, New Jersey's Daniel's Law.

IX.   Because and to the extent that one or more Plaintiffs lobbied the New Jersey legislature to amend Daniel's Law to permit individuals to seek money damages for alleged violations of Daniel's Law; submitted takedown requests at a time and in a manner that was calculated to make and/or did make compliance difficult or impossible; solicited thousands of individual claims for alleged violations of Daniel's Law; and/or brought claims based on those alleged violations, Plaintiffs' claims are barred by the equitable doctrine of unclean hands; because Atlas Data's actions constitute entrapment or attempted entrapment; and/or because Atlas Data's actions made it impossible for Innovis to comply with the requests.

X.   The alleged damages sustained by Plaintiffs, if any, were caused by the conduct of third parties over whom Defendant had no control.

XI.   One or more Plaintiffs have failed to mitigate their damages by delaying, or by allowing Atlas Data to delay, the submission of takedown requests, especially insofar as the delay was due to an effort to overwhelm Innovis by sending thousands of requests at once.

XII.    Plaintiffs' claims fail to the extent that Innovis is not a proper party to this lawsuit, including with respect to the websites identified in the Complaint.

XIII.   To the extent Innovis is found to be liable to Plaintiffs, Innovis is entitled equitable indemnification from Atlas.

XIV.    Plaintiffs' claims for liquidated damages fail to the extent that such damages would constitute an impermissible penalty and/or fail to reasonably relate to any claimed actual damages.

XV.     Plaintiffs' claim for punitive damages fails to the extent that the Complaint states no facts in support of a claim for punitive damages and/or to the extent that such damages would be inconsistent with state or federal constitutional principles.

XVI.    Plaintiffs' claims for injunctive relief fail to the extent that they have not set forth any basis for such relief, including as to Atlas, which is not a "Covered Person."

XVII. Innovis reserves its right to assert additional affirmative defenses at such time and to such extent as warranted by its ongoing discovery of the facts of this case.

## **PRAYER FOR RELIEF**

WHEREFORE, Innovis prays this Honorable Court to find that Innovis did not violate Daniel's Law; to dismiss Plaintiff's claims against Innovis with prejudice; and to award Innovis such other and further relief as the Court deems right and just.

## <u>CERTIFICATION PURSUANT TO L. CIV. R. 11.2</u>

I hereby certify that to my knowledge, the matter in controversy is not the subject

of any other action in any court or other pending arbitration proceeding, and that no

other actions or arbitration proceedings are contemplated.  I have no knowledge at this

time of the names of any other party who should be joined in this action.

Respectfully submitted,

/s/*Angelo A. Stio, III*
Angelo A. Stio, III
**TROUTMAN PEPPER LOCKE LLP**
104 Carnegie Center Drive, Suite 203
Princeton, NJ 08540
Angelo.stio@troutman.com
(609) 452-0808
*Attorneys for Defendant Innovis Data*
*Solutions, Inc.*

Dated: October 3, 2025

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 3, 2025, I filed the foregoing ANSWER AND AFFIRMATIVE DEFENSES with the Court's Electronic Case Filing (ECF) system, which will send a Notice of Electronic Filing (NEF) to, and thereby effect service upon, all parties through their counsel of record.

/s/ *Angelo A. Stio, III*
Angelo A. Stio, III
Troutman Pepper Locke LLP